

# IN THE
# TENTH COURT OF APPEALS

## No. 10-19-00310-CV

**STEPHEN MCGUIRE AND TRUDY MCGUIRE,**

**Appellants**

**v.**

**ASSEMBLY BY US LLC,**

**Appellee**

**From the 414th District Court**
**McLennan County, Texas**
**Trial Court No. 2016-3717-5**

## MEMORANDUM OPINION

Trial of this personal injury action was to the court. Stephen and Trudy McGuire

were the plaintiffs in the trial court. Assembly by Us, LLC, was one of the defendants in

the trial court. The McGuires' claims as to the other defendants were disposed of in the

trial court; Assembly is the only appellee in this appeal. After it had heard the evidence,

the trial court entered a money judgment for various elements of damages in favor of the

McGuires for $263,500. However, the trial court awarded "0.00" damages on Trudy's

claim related to a reduction in her monthly retirement benefits brought about by her early retirement. The trial court also awarded "0.00" damages in connection with Trudy's claim that she lost medical benefits because she had to retire early. Those two zero damage awards are the subject of this appeal. They maintain that the evidence is both legally and factually insufficient to support that portion of the trial court's judgment. Because we find that the evidence is legally and factually sufficient to support the trial court's judgment, we affirm.[1]

Stephen McGuire was born on January 21, 1940. Trudy McGuire was born on December 19, 1944. Stephen and Trudy had been married for 52 years when this case was tried on October 20, 2018.

Stephen suffered a stroke in September 2014. To make things easier to care for Stephen, Trudy began a search for two special beds to replace the king size bed that she and Stephen had at the time. Trudy talked on the phone to a man named Daryl. Daryl was employed by one of the other original defendants. Daryl told Trudy that he could supply an "Adjustable Sleep System" that would meet the McGuires' needs.

Trudy ordered two of the sleep systems on December 15, 2014. When Trudy placed the order, Daryl asked her whether the floor of the room where the beds were to

---

[1] Appellee, Assembly by Us, LLC, did not file a brief in this case. Assembly has notified this Court that it terminated its status as an LLC with the State of Texas. That issue was not litigated in the trial court, and it has not been briefed in this court. Therefore, we will not address that issue. This case is submitted on Appellant's brief and the record.

be placed was a smooth, hard surface floor. Trudy told Daryl that it was. Daryl then mentioned that he would include some caster cups in the shipment and that it would be necessary to use the caster cups so that the beds would not slide.

The evidence indicates that there was a chain of actors who performed different roles in getting these types of beds to the ultimate customer. The final link in that chain in this case was Assembly.

Assembly delivered and assembled the beds on December 24, 2014. There is evidence in the record to indicate that there were no caster cups in with the shipment. The record contains evidence that Assembly personnel knew that it was dangerous to install the beds without caster cups. Rather than warn the McGuires of that danger, on-site Assembly personnel told Trudy that that should not be a problem so long as the casters remained locked.

After Assembly personnel left, Trudy attempted to transfer Stephen from his wheelchair into his new bed. Stephen and Trudy had been trained in the transfer procedure. During the transfer process on this occasion, the new bed slid from under Stephen; both Stephen and Trudy fell to the floor.

Stephen suffered soreness, bruising and aggravated an ankle injury in the fall, but was not seriously injured. Trudy's head struck the floor.

Prior to the fall on Christmas Eve 2014, Trudy had broken her neck. As a result of that previous injury, Trudy received medical treatment that included surgical fusion procedures as well as procedures to install hardware in Trudy's neck and skull.

Because of neck and back pain that she experienced after the December 24, 2014, incident, Trudy went to the emergency room on December 26. Sometime later, Dr. Harold Bruce Hamilton, Trudy's neurosurgeon, discovered that the fall had compromised the hardware that he had previously placed in Trudy's neck and skull. Dr. Hamilton testified that Trudy's condition was good up until the time that she fell on December 24.

After the December 24 fall, Trudy received several facet nerve injections for pain. Ultimately, in May 2015, Dr. Hamilton performed surgery on Trudy to correct some of the problems with the hardware that he had previously placed in Trudy's neck and skull. Further problems with the hardware necessitated additional surgeries in June 2017 and in May 2018. Trudy also received additional facet nerve injections and underwent other pain management efforts. Dr. Hamilton testified that Trudy's pain was better but that she would suffer some pain for the rest of her life.

Trudy began working in the McLennan County archives department on August 12, 1998. In her work, Trudy had to walk long distances, climb ladders, lift books that weighed from twenty-five to fifty pounds, and move heavy boxes. After Trudy's fall, she spent some time off, but returned to work.

Claire McDaniels, the records management officer for McLennan County, testified that Trudy was able to do her job before the December accident but not after; she walked slower and was stooped over.

Trudy testified as to other things other than her job that she could no longer do after she fell in December. She was limited in her housework, gardening, church attendance, Stephen's care, interaction with grandchildren, driving, and other activities. Trudy's son, Ian, testified similarly as to Trudy's limitations.

Although Trudy intended to retire in August 2018, when she had completed twenty years of service, she testified that she took early retirement in January 2016, about one year after the December 2014 fall, because she could no longer do her work.

The evidence shows that because Trudy retired before she had completed twenty years of employment with McLennan County, her retirement benefit was $700 less per month than it would have been had she worked until she had served a full twenty years. Also, because she retired early, Trudy was not eligible for insurance coverage.

On August 7, 2019, the trial court entered its judgment. In that judgment, the trial court awarded the McGuires $263,500. The trial court apportioned that amount as follows:

|  |  |
|---|---|
| To Stephen: |  |
| Pain and suffering | $1,000.00 |
| Reimbursement of Care | 22,500.00 |
| To Trudy: |  |
| Past Mental Anguish | $40,000.00 |
| Future Mental Anguish | 10,000.00 |

| | |
|---|---:|
| Past Pain and Suffering | 100,000.00 |
| Future Pain and Suffering | 50,000.00 |
| Past Disfigurement | 5,000.00 |
| Past Impairment | 25,000.00 |
| Future Impairment | 10,000.00 |
| Loss of Retirement Benefits | 0.00 |
| Loss of Medical Benefits | 0.00 |

Again, it is only the trial court's failure to award damages for loss of retirement benefits and medical benefits that is the subject of this appeal. The McGuires first complain that the evidence is legally insufficient to support the zero damage awards.

Although the McGuires requested that the trial court make findings of fact, it did not. The McGuires did not call that failure to the attention of the trial court. There is no complaint on appeal as to the trial court's failure to make those findings. It is implied that the trial court made all findings that are necessary to support the judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

In an appeal from the trial court's judgment in a bench trial, a party may challenge the legal and factual sufficiency of the evidence to support the judgment as in any other case. *Huang v. Don McGill Toyota, Inc.*, 209 S.W.3d 674, 677 (Tex. App. —Houston [14th Dist.] 2006, no pet.)(citing *Roberts Express, Inc. v. Expert Transp., Inc.*, 842 S.W.2d 766, 769–70 (Tex. App.—Dallas 1992, no writ)). We are to review sufficiency of the evidence issues after a bench trial the same as we would review issues that involve sufficiency of the evidence to support jury findings. *Catalina v. Blasdel*, 881 S.W.2d 295 (Tex. 1994).

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Kellar v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We are to credit favorable evidence, if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *Id.* Also, we note that the factfinder is the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. *Id.* at 819.

The Supreme Court in *Dow Chemical* stated the standard as follows:

> When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); Hall, *Standards of Review in Texas,* 29 ST. MARY'S L.J. 351, 481–82 (1998). In reviewing a "matter of law" challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Sterner,* 767 S.W.2d at 690; Hall, *supra,* at 482. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law. *Sterner,* 767 S.W.2d at 690; Hall, *supra,* at 482. The point of error should be sustained only if the contrary proposition is conclusively established. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983); Hall, *supra,* at 482. <u>*Dow Chem. Co. v. Francis*</u>, 46 S.W.3d 237, 241–42 (Tex. 2001).

When we review a finding for factual sufficiency, we consider all the evidence and will set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex. 1986).

The McGuires maintain that they conclusively established their entitlement to damages for the loss of increased retirement and insurance benefits.

At trial, Assembly's counsel asked Trudy whether she thought that her age could account for some of her problems. Trudy responded: "I don't consider age necessarily a problem. I think that you do what you can do and what you want to do. If you want to do it bad enough, you can usually do it." It is apparent from Trudy's testimony that it was important to her that she personally take care of Stephen; she did not want any help. Trudy testified that she had "rather float my own boat than have someone else float it for me. I have always been that way. And I guess I will die being that way." Trudy attributed her being able to take care of Stephen to her lifting the heavy things at work.

Trudy's desire to take care of her husband of 52 years is indeed commendable. However, a reasonable person could attribute her strong desire to personally care for Stephen to be the reason for her early retirement, not the injuries received in the fall.

As applicable to this case, negligence consists of a legal duty owed by one party to another, a breach of that duty, and damages that proximately result from the breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990).

The trial court clearly attributed all other damages to the December 24 fall. We can see no reason for the trial court's treating the early retirement and insurance issues differently from the other damage awards except that the fall did not proximately cause the early retirement. A reasonable person could have so found. Trudy's testimony would

support that finding. The McGuires had the burden of proof on the early retirement issues. A review of the record shows that the McGuires did not establish the issue as a matter of law. We overrule the McGuires' first issue on appeal.

In their second issue on appeal, the McGuires claim that the evidence is factually insufficient to support the zero damages award. We have set out the standard of review earlier. We have considered all the evidence in this record and cannot find that the judgment of the trial court is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We overrule the McGuires' second issue on appeal.

We affirm the judgment of the trial court.

JIM R. WRIGHT
Senior Chief Justice

Before Justice Johnson,
     Justice Smith, and
     Justice Wright[2]
Affirmed
Opinion delivered and filed December 22, 2021
[CV06]



---

[2] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.